**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| | * | |
| | * | |
| **v.** | * | **Crim. Case No.:  SAG-07-0261** |
| | * | |
| **JAMES THOMAS BRICE,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM OPINION**</u>

On March 19, 2008, James Thomas Brice pled guilty to Count One of a Second Superseding Indictment charging him with conspiracy to distribute one kilogram or more of heroin.  ECF 138.  On January 12, 2009, United States District Judge William D. Quarles Jr. sentenced Brice to 262 months in prison, with credit for time served since September 25, 2007, to run concurrent with any Maryland State sentence.  ECF 211, 213.  Brice is currently incarcerated at FCI Fort Dix.  On January 26, 2021, Brice filed a *pro se* Motion for Compassionate Release. ECF 373. This Court appointed counsel to represent Brice, and full briefing ensued.  ECF 380, 382, 384.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Brice's Motion will be denied.

**I.     LEGAL STANDARDS**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction."  *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018).  While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act

granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons."  § 603(b)(1).  Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied:  (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.  *Id.*  Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A)(i); *United States v. High*, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021).

## II.    ANALYSIS

It appears that Brice adequately exhausted his administrative remedies.  *See* ECF 382 at 16 (Government acknowledgement that Brice has met the administrative prerequisites).  However, even assuming that this gatekeeping requirement has been satisfied, Brice's Motion fails to establish an "extraordinary and compelling reason" warranting further consideration of compassionate release.  The reasons Brice cites are (1) the increased risk posed to him by the COVID-19 pandemic, and (2) the discrepancies between his sentence and those imposed on others, including his co-defendants and persons convicted of similar offenses today.  *See* ECF 380, 384.

Looking more closely at those two reasons, Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A).  28 U.S.C. § 994(t).  In response, the

Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over sixty-five years old, has failing health, and has served at least ten years or seventy-five percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP.  *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (A)–(D) (U.S. Sentencing Comm'n 2018) [hereinafter "U.S.S.G."]. Where the defendant files his own motion, though, this Court has authority to consider any "extraordinary and compelling reason" a he might raise, regardless of the BOP's more limited definitions. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason" for an inmate's release under the First Step Act. *High*, 2021 WL 1823289, at *3; *e.g.*, *Wise v. United States*, No. ELH-18-72, 2020 WL 2614816, at *6-8 (D. Md. May 22, 2020); *United States v. Gutman*, No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 22, 2020).  In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act.  *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free'

card.").  Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released.  *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *aff'd*, 825 F. App'x 324 (6th Cir. 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

The analysis under the first prong of this two-part inquiry is heavily guided by the Center for Disease Control's ("CDC's") published risk factors for incurring a severe, life-threatening case of COVID-19.  *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://tinyurl.com/y9chuzkm (last updated Apr. 29, 2021).  While Brice does not appear to suffer from specific conditions on that list, he does have some identifiable medical issues that he posits could potentially increase his risk.  However, even if Brice were deemed to have one or more underlying conditions that elevated his risk, he would not be automatically entitled to

4

compassionate release.  Instead, his underlying medical conditions must compellingly elevate his risk of becoming severely ill, or dying, from COVID-19.  In that vein, it is significant that Brice tested positive for COVID-19 earlier this year and remained asymptomatic throughout his bout with the virus.  ECF 382-1 at 4, 7.  While, of course, there are no guarantees that he would have a similarly benign course if he were to be re-infected, there are no indicators suggesting that he is particularly susceptible to increased viral complications.

Moreover, Brice declined to avail himself of a COVID-19 vaccine, authorized for emergency use by the FDA, when such vaccination was offered to him by the BOP.  ECF 382 -2. Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release.  *See, e.g.*, *United States v. Martin*, Case No. 1:05CR21, 2021 WL 1168696, at *2 (N.D. W. Va. Mar. 26, 2021) (collecting cases), *appeal docketed*, No.21-6528 (4th Cir. Apr. 7, 2021); *United States v. Siegel*, Cr. No. TDC-03-0393, 2021 WL 962491 (D. Md. Mar. 15, 2021) (premising a decision to deny compassionate release, in part, on the fact that the defendant "has refused to accept vaccination, a more direct means of protecting herself from COVID-19 than full release from prison"), *appeal docketed* No. 21-6426 (4th Cir. Mar. 23, 2021). Any decision to the contrary would create a perverse incentive in favor of declining the vaccine, undermining the BOP's efforts to protect its incarcerated population and to allow prison operations to return to some degree of normalcy in the coming months.  In fact, information available on the BOP's website indicates that there are no inmate or staff cases of COVID-19 at FCI Fort Dix, perhaps because a significant number of its inmates and staff have been inoculated.  *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated May 12, 2021).

Brice argues, in the alternative, that this Court should consider the length of his sentence, which he contends is longer than that he would receive if sentenced today, and what he views as an unwarranted sentencing disparity with his co-defendants to constitute the "extraordinary and compelling reason" justifying further consideration of compassionate release. ECF 380, 384. As background, Brice is correct that, as a result of a decision issued by the United States Court of Appeals for the Fourth Circuit, he would not be a career offender if he were sentenced today. In *United States v. Norman*, 935 F.3d 232, 237–39 (4th Cir. 2019), the Fourth Circuit decided that conspiracy to distribute narcotics did not constitute a "controlled substance offense" for purposes of qualifying for career offender treatment. Thus, if Brice were to be sentenced today after *Norman* and certain intervening changes to the sentencing guidelines, his advisory guideline range would likely be meaningfully lower. However, the First Step Act did not expressly change the law in any way that would modify Brice's sentence, and it did not suggest or require the recalculation of existing sentences. Neither *Norman* nor the changes to the sentencing guidelines are retroactively applied on collateral review.

Brice also cites an "unwarranted" sentence disparity with his co-defendants as a possible extraordinary and compelling reason justifying his release. This Court is not persuaded that the disparity is "extraordinary and compelling." Sentencing is, at heart, an individualized inquiry. A review of the presentence reports of Brice's co-conspirators reflects that several of them pled to conspiracy to distribute quantities of heroin less than 1000 kilograms, as opposed to the 1000 to 3000 kilograms deemed reasonably foreseeable to Brice in his plea agreement. Thus, the defendants were not starting on equal footing as to a sentencing guidelines range, despite the fact that they were all part of the same conspiracy. Similarly, none of Brice's co-defendants appear to have six prior convictions for narcotics manufacturing or distribution offenses, which significantly

impacted the long sentence he received.  Brice's co-defendant with the longest sentence, Kevin Hickman, was granted compassionate release in November of 2020.  ECF 367, 368.  However, Hickman was sixty years of age and suffered from type II diabetes, moderate-to-severe asthma, hypertension, and chronic renal insufficiency, placing him at much greater risk for COVID-19 complications during a period when viral rates were increasing and no vaccines were available. ECF 367.  The compassionate release of one individual under particularized health-related circumstances, however, cannot be viewed as creating a new bar for the evaluation of all co-defendants' sentences.  The more relevant inquiry is whether Brice's sentence diverges dramatically from others with similar criminal histories, similar charged conduct, and similar health conditions who were sentenced around the same time.  There is no evidence of such discrepancy.

To the extent Congress wishes to mandate a broader realignment of previously imposed sentences with current sentencing practices, it must do so expressly.  If this Court were to hold that non-retroactive changes to sentencing case law or revisions to sentencing guidelines create extraordinary and compelling reasons justifying compassionate release, it would open the door to the unfettered reconsideration of previously imposed sentences.  That ruling would blatantly contravene the longstanding presumption of sentencing finality, and Congress has provided no indication it intended the principles underlying compassionate release to extend that far.  *See United States v. Lancaster*, No. 20-6571, 2021 WL 1823287, at * 2 (4th Cir. May 7, 2021) (noting, with respect to an eleven-year-old sentence, that "in furtherance of the important interest of finality, it generally should not be disturbed" absent express statutory authority).

Accordingly, in the absence of an extraordinary and compelling reason permitting further review, Brice's Motion, ECF 373, will be denied by separate order.


Dated: May 13, 2021                                     _____/s/_____
                                                        Stephanie A. Gallagher
                                                        United States District Judge